IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACK JOHNSON and REBECCA M. JOHNSON,<br><br>    Plaintiffs,<br><br>  v.<br><br>BRANDY SMITH, et al.,<br><br>    Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action No.<br>15-8596 (JBS/JS)<br><br>**MEMORANDUM OPINION** |

**SIMANDLE, District Judge:**

Plaintiffs pro se Jack Johnson and Rebecca Johnson (collectively, "Plaintiffs") filed this 42 U.S.C. § 1983 suit alleging that various employees of the New Jersey Division of Youth and Family Services[1] ("NJDYFS"), and others, violated their constitutional rights by removing their infant son, hereinafter referred to as "R.J.," from their custody. Since Plaintiffs seek to bring this action in forma pauperis, the Court has an obligation to screen the Complaint under 28 U.S.C. § 1915(e)(2). The Court finds as follows:

1. Plaintiffs filed the instant Complaint with an application to proceed in forma paupuris. [Docket Item 1.] Because Plaintiffs' application disclosed that they were

---

[1] Pursuant to L. 2012, c. 16, effective June 29, 2012, the Division of Youth and Family Services is now known as the Division of Child Protection and Permanency.

indigent, the Court permitted the Complaint to be filed without prepayment of fees, pursuant to 28 U.S.C. § 1915, and ordered the Clerk of Court to file the Complaint. [Docket Item 2.]

2. Section 1915(e)(2)(B) requires the Court to screen the Complaint and to dismiss any claim that is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. The Court also has "a continuing obligation to assess its subject matter jurisdiction" and may "dismiss a suit sua sponte for lack of subject matter jurisdiction at any stage in the proceeding." Zambelli Fireworks Mfg. Co., Inc. v. Wood, 592 F.3d 412, 420 (3d Cir. 2010). The Court draws the facts of this case from the Complaint and, for the purposes of this screening, accepts the factual allegations as true.

3. According to the Complaint, before marrying Jack Johnson, Rebecca Johnson "had had her children placed in foster care because of the fact that she was homeless." [Docket Item 1 ("Compl.") at ¶ 12.] Rebecca Johnson was subsequently advised by an unnamed NJDYFS employee that, if Ms. Johnson found "suitable placement and complete parenting classes[,] her children would be returned." (Id. at ¶ 13.) According to the Complaint, Rebecca Johnson "complied with all directives for the return of her children . . . placed on her by [NJDYFS]." (Id. at ¶ 14.) She

also "continued to look for and found suitable quarters" in a three-bedroom apartment. (Id. at ¶ 18.)

4. Rebecca Johnson was engaged to Jack Johnson when she became pregnant with their son, R.J., and the two were married sometime after R.J. was born. (Id. at ¶¶ 13, 16.) According to the Complaint, "[d]ue to fraudulent allegations of abuse and neglect[,] [R.J] at birth was taken from the hospital to foster care," although "[t]he investigation concluded that the allegations were unfounded." (Id. at ¶ 15.) Notwithstanding that the allegations were "unfounded," the Complaint alleges that Defendant Crystal Murphy, an investigator for NJDYFS, "without authorization conducted her own fraudulent investigation concluding it with false findings." (Id. at ¶¶ 4, 17.)

5. While visiting R.J. and Rebecca Johnson's other children in foster care, Plaintiffs "noted that the children had been abused and neglected" and that "[t]he infant child [R.J.] had a temperature." (Id. at ¶ 19.) This, "coupled with other evidence such as a laceration on another child[,]" caused Plaintiffs to file "a formal motion Pro Se to have this abuse investigated" as well as have [Defendant] Maria Hernandez removed as the attorney." (Id.) Defendant Hernandez, a public defender, had apparently previously been assigned to represent Rebecca Johnson (id. at ¶ 6), although it is not clear from the Complaint in what capacity Defendant Hernandez was assigned to

represent her. According to the Complaint, Judge Ridgway never ruled on Plaintiffs' "Pro Se motion." (Id. at ¶ 20).

6. A trial was subsequently conducted, after which R.J. was removed from Plaintiffs' custody by Defendant Olnolvea Bastianelli, a social worker at Pamona Hospital. (Id. at ¶ 7, 21, 23.) Plaintiffs allege Defendant Murphy's "actions and fabrications," with the assistance of Defendant Nadine Amaretto, a caseworker at Pamona Hospital who ordered a warrant of removal, "were the reason that the rental property went from a three bedroom to a one bedroom which could not accommodate plaintiffs['] family[,] causing the children to remain in foster care," and "caused the removal of [R.J]." (Id. at ¶¶ 7, 23-24.)

7. Plaintiffs subsequently filed the Complaint in federal court. [Docket Item 1.] Plaintiffs allege that their Sixth Amendment right to counsel and Fourteenth Amendment right to "be free of bias were violated by Defendants when "false allegations were claimed as reasons for the removal of plaintiff[s'] children to foster care [and] unauthorized investigations and results were used to usurp the plaintiff[s'] rights." (Compl. at ¶ 27-28.) As relief, Plaintiffs ask the Court: (1) to issue a declaratory judgment that Defendants violated the U.S. and New Jersey law by "[f]ail[ing] to remain objective in relationships with the plaintiffs;" (2) to issue an injunction ordering Defendants or their agents "to investigate fairly without bias;"

(3) to grant compensatory damages in the amount of $50,000 against defendants employed by NJDYFS, $50,000 against defendants employed by Pamona Hospital, and $50,000 against Defendant Werner, a chaplain of the Atlantic City Rescue mission who allegedly provided confidential information to Defendant Murphy; and (4) "such other relief as it may appear plaintiffs are entitled." (Id. at p.6-7.)

8. The Court will dismiss the Complaint for lack of subject matter jurisdiction or, in the alternative, pursuant to the Rooker-Feldman doctrine. Although Plaintiffs have clothed their complaint in the garb of a civil rights action, the Complaint boils down to a dispute over the custody of their infant child and the interactions of Plaintiffs and Defendants in that custody process. As discussed below, a federal court lacks subject matter jurisdiction to decide such a dispute. Moreover, the Complaint appears to be a collateral attack on a final state-court judgment, which cannot be reviewed by a federal district court pursuant to the Rooker-Feldman doctrine.

9. As an initial matter, the Court does not have jurisdiction over determinations of parental rights and child custody, including those presented in this case, because these are matters within the longstanding exception to federal jurisdiction in matters involving domestic relations of husband and wife, and parent and child. The New Jersey Legislature

"adopted comprehensive legislation for the protection and welfare of the children of this State," and child abuse and neglect cases are controlled by Title 9 of the New Jersey Statutes. See New Jersey Div. of Youth and Family Serv. v. M.C. III, 990 A.2d 1097, 1107 (N.J. 2010). New Jersey law makes clear that "the Superior Court, Chancery Division, Family Part has **exclusive original jurisdiction** over noncriminal proceedings under this act alleging the abuse or neglect of a child." N.J.S.A. § 9:6-8.24 (emphasis added). New Jersey law also mandates that "[a]ll noncriminal cases involving child abuse" be "transferred to [New Jersey family court] from other courts." N.J.S.A. § 9:6-9.22; see also Cesare v. Cesare, 713 A.2d 390, 399 (N.J. 1998) (noting the "family courts' special jurisdiction and expertise in family matters"). Moreover, appeals from any "final order or decision in a case involving child abuse" under Title 9 are taken to New Jersey appellate courts, not to federal court. N.J.S.A. § 9:6-8.70. Thus, even when a complaint is "drafted in tort, contract, 'or even under the federal constitution,'" if the complaint involves matters of domestic relations, it is generally not within the federal court's jurisdiction. New Jersey Div. of Youth and Family Servs. v. Prown, 2014 WL 284457, at *2 (D.N.J. Jan. 24, 2014) (citation omitted).

10. These statutory provisions are consistent with the well-settled general understanding that the "'whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States.'" Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992) (quoting In re Burrus, 136 U.S. 586, 593-94 (1890)). To the extent that Plaintiffs seek review of any temporary or permanent child custody or parental rights determinations, this federal court lacks jurisdiction to entertain these claims.

11. Even if this Court did have federal subject matter jurisdiction over a child custody dispute such as the one present here, which it does not, the Rooker-Feldman doctrine would still bar the present action, since it appears from the Complaint that Plaintiffs are directly challenging final orders of removal in state-court proceedings which have concluded.

12. "[U]nder what has come to be known as the Rooker-Feldman doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." Lance v. Dennis, 546 U.S. 459, 463 (2006); see also Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 169 (3d Cir. 2010) (Rooker-Feldman doctrine prohibits district courts from reviewing proceedings "already conducted by the 'lower' tribunal to determine whether it reached its result in accordance with law.") (quotations and citation omitted). The

doctrine applies "where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." Lance, 546 U.S. at 466 (citation omitted). For the Rooker-Feldman bar to apply, four requirements must be met: (1) the federal plaintiff must have lost in state court; (2) the plaintiff complains of injuries caused by state-court judgments; (3) the state court judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments. Great W. Mining, 615 F.3d at 166 (quotation omitted).

13. All four requirements are satisfied here: (1) Plaintiffs lost in state court; (2) most, if not all, of the injuries alleged in the Complaint stem from the removal of Plaintiffs' children; (3) the state court ordered the removal of Plaintiffs' children; and (4) Plaintiffs seeks an injunction from this Court to overturn the state court's judgments and return their children to them. This Court cannot review, negate, void, or provide relief that would invalidate decisions in the state court matter. Thus, to the extent Plaintiffs directly challenge the state court's findings of removal and asks this Court to overturn those judgments, those claims are barred. See Johnson v. City of New York, 347 F. App'x 850, 852 (3d Cir. 2009) (affirming district court's dismissal of plaintiff's claims that child services improperly removed his children for

abuse and neglect, because Rooker-Feldman doctrine barred review); White v. Supreme Court of N.J., 319 F. App'x 171, 173 (3d Cir. 2009) (affirming district court's refusal to hear child custody case under Rooker-Feldman); New Jersey Div. of Youth and Family Servs. v. Prown, 2014 WL 284457, at *2 (D.N.J. Jan. 24, 2014) (holding that Rooker-Feldman barred review of state proceedings concerning child custody).

14. In sum, and for the foregoing reasons, the Complaint will be dismissed for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(h) or, in the alternative, for failure to state a claim pursuant to 28 U.S.C. § 1915(e). Dismissal of the Complaint will be without prejudice to Plaintiff's right to file a complaint in a State court of competent jurisdiction. An accompanying Order shall be entered.

**November 21, 2018**              **s/ Jerome B. Simandle**
                                   JEROME B. SIMANDLE
                                   U.S. District Judge